# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

JOSHUA LEWIS, individually and on behalf of all others similarly situated

                        Plaintiff,

            v.

MAVERICK TRANSPORTATION LLC and LYTX, INC.,

                        Defendants.

No. 3:22-cv-00046-NJR
Hon. Chief Judge Nancy J.  Rosenstengel

# MEMORANDUM OF LAW MOTION IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANT MAVERICK TRANSPORTATION LLC

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   OVERVIEW OF PLAINTIFF'S CLAIMS AND THE LITIGATION ................................ 2

III.  THE SETTLEMENT .......................................................................................... 5

    A. Settlement Benefits ...................................................................................... 5

    B. Notice ........................................................................................................ 6

    C. Attorneys' Fees, Litigation Costs, and a Service Award ................................. 7

IV.   APPLICABLE LEGAL STANDARDS .................................................................... 7

V.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, WARRANTING
    FINAL APPROVAL. ......................................................................................... 9

    A. Plaintiff and Class Counsel Have Adequately Represented the Class, Obtaining an
       Excellent Settlement to Which No Class Member or Government Entities Have
       Objected. ................................................................................................... 9

    B. The Settlement Was the Result of Informed, Arm's Length Negotiations Between the
       Parties. ...................................................................................................... 11

    C. The Settlement Provides Exceptional Relief for the Settlement Class, ......................... 12

       1. The Complexity, Cost, and Expense of Continued Litigation Supports Approval of
          the Settlement. ......................................................................................... 12

       2. The Settlement Provides Meaningful, Automatic Payments to Settlement Class
          Members. ................................................................................................. 14

       3. The Requested Attorneys' Fees Are Reasonable and In Line With Similar Awards
          Approved in the Seventh Circuit. ............................................................... 15

       4. There Are No Side Agreements. ................................................................. 15

    D. The Settlement Treats All Settlement Class members Equitably. ................................. 15

    E. The Notice Program Satisfies Rule 23 and Due Process and Constitutes the Best Notice
       Practicable. ................................................................................................ 16

VI.   FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE. .......... 16

VII.  CONCLUSION ............................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Am. Int l Grp., Inc. v. ACE INA Holdings, Inc*.,
　No. 07 CV 2898, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012) ................................................... 7

*Anderson v. Torrington Co.*,
　755 F. Supp. 834 (N.D. Ind. 1991) ............................................................................................. 9

*Armstrong v. Bd. of Sch. Dirs.*,
　616 F.2d 305 (7th Cir. 1980) ...................................................................................................... 8

*Chambers v. Together Credit Union*,
　No. 19-CV-00842-SPM, 2021 WL 1948453 (S.D. Ill. May 14, 2021) ............................. 15, 16
*Charvat v. Valente*,
　No. 12-CV-05746, 2019 WL 5576932 (N.D. Ill. Oct. 28, 2019) ............................................. 10

*E.E.O.C. v. Hiram Walker & Sons, Inc*.,
　768 F.2d 884 (7th Cir. 1985) ...................................................................................................... 8

*Gautreaux v. Pierce*,
　690 F.2d 616 (7th Cir. 1982) ...................................................................................................... 8

*Gen. Elec. Capital Corp. v. Lease Resolution Corp*.,
　128 F.3d 1074 (7th Cir. 1997) .................................................................................................... 9

*Goldsmith v. Tech. Sols. Co.*,
　No. 92-cv-4374, 1995 WL 17009594 (N.D. Ill. Oct. 10, 1995) ............................................... 12

*Great Neck Capital Appreciation Inv. P ship, L.P. v. PricewaterhouseCoopers, L.L.P.*,
　212 F.R.D. 400 (E.D. Wis. 2002) ............................................................................................... 9

*Guippone v. BH S&B Holdings LLC*,
　No. 09 Civ. 01029 (CM), 2016 WL 5811888 (S.D.N.Y. Sep. 23, 2016) ................................. 13

*In re Apple Computer Sec. Litig.*,
　No. C-84-20148-(A)-JW, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) .................................... 14

*In re Cap. One Tel. Consumer Prot. Act Litig.*,
　80 F. Supp. 3d 781 (N.D. Ill. 2015) ............................................................................................ 9

*In re Mexico Money Transfer Litig. (W. Union & Valuta)*,
　164 F. Supp. 2d 1002 (N.D. Ill. 2000), *aff'd sub nom., In re Mexico Money Transfer Litig*., 267
　F.3d 743 (7th Cir. 2001) ......................................................................................................... 8, 9

*In re Michael Milken & Assocs. Sec. Litig.*,
   150 F.R.D. 46 (S.D.N.Y. 1993) ............................................................ 13

*Isby v. Bayh*,
   75 F.3d 1191 (7th Cir. 1996) ........................................................... 8, 9

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ..................................................... 13

*Mars Steel Corp. v. Cont l Ill. Nat l Bank & Trust Co.*,
   834 F.2d 677 (7th Cir. 1987) .............................................................. 9

*Noll v. eBay, Inc.*,
   309 F.R.D. 593 (N.D. Cal. 2015)......................................................... 12

*Owens v. GLH Cap. Enter., Inc.*,
   No. 16-CV-1109-NJR-SCW, 2018 WL 1240461 (S.D. Ill. Mar. 9, 2018)............................. 12

*Smith v. CRST Van Expedited, Inc.*,
   No. 10-CV-1116-IEG (WMC), 2013 U.S. Dist. LEXIS 6049 (S.D. Cal. Jan. 14, 2013)......... 14

*West Virginia v. Chas. Pfizer & Co.*,
   314 F. Supp. 710 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971).......................... 13, 14

**Rules**

Fed. R. Civ. P. 23 ................................................................................ passim

**Statutes**

28 U.S.C. § 1715................................................................................ 6, 11

**Other Authorities**

MANAGING CLASS ACTION LITIGATION: A POCKET GUIDE FOR JUDGES, p. 27 (3d
   ed. 2010) ................................................................................ 16

## I.    INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 23 ("Rule 23") and the Court's Preliminary Approval Order (Amended), Plaintiff Joshua Lewis ("Plaintiff" or "Settlement Class Representative") respectfully requests that the Court grant final approval of the Settlement reached between Plaintiff and Defendant Maverick Transportation LLC ("Defendant" or "Maverick", collectively with Plaintiff the "Parties").

Plaintiff firmly believes that the Settlement is in the best interest of the Settlement Class and clearly satisfies the standard of approval as discussed herein. Plaintiff and Class Counsel have adequately represented the Settlement Class, obtaining an excellent Settlement to which no class member or governmental entities have objected.[1] The Settlement is the product of arm's-length negotiations by experienced and informed counsel with a firm understanding of the strengths and weaknesses of their clients' respective claims and defenses.

The Settlement provides for a common fund of $56,800 (the "Settlement Fund") for the benefit of the 71 Settlement Class Members, with no reverter. There is no claims process; instead, each Settlement Class Member who does not opt out will automatically receive his or her pro rata distribution from the Settlement Fund, less any court-approved attorneys' fees and costs, and costs of notice and settlement administration.[2] Any residual funds that remain undeliverable 121 days after the initial distribution will be disbursed in a secondary distribution to Settlement Class Members that cashed their initial checks, if economically feasible. Thus, the Settlement has no obvious deficiencies, and does not improperly grant preferential treatment to Plaintiff or segments of the Settlement Class.

---

[1] The deadline for objections is February 13, 2023.
[2] As further discussed below, to date, Class Counsel have received two requests for exclusion.

Consistent with Seventh Circuit precedent, Class Counsel is requesting attorney's fees equal to 33.33% of the Settlement Fund, as well as out of pocket litigation expenses of $1,745.10. Also, consistent with Seventh Circuit precedent, Class Counsel will request a Service Award of $5,000 in recognition of Plaintiff's service as the Class Representative, which Defendant has agreed to pay in addition to the Settlement Fund, for a Total Settlement Amount not to exceed $61,800.

Class Counsel is serving as the Settlement Administrator and total administrative costs are currently $1,625.32, representing less than 3% of the Settlement Fund. *See* Declaration of Randall K. Pulliam ("Pulliam Decl.") at ¶¶ 12, 22.

Class Counsel believe that this is an excellent result for the Settlement Class, especially when weighed against the costs, risks, and delay of continued litigation, trial, and appeal. Moreover, the Court-approved notice program has been fully implemented, and, to date, no objections and only one (1) request for exclusion have been received. *See id*. at ¶¶ 5-11, 19, 21.

Accordingly, Plaintiff respectfully submits that the Settlement satisfies all criteria for final approval, and specifically requests this Court: (i) grant final approval of the Settlement as fair, reasonable, and adequate; (ii) grant final certification to the Settlement Class; (iii) find that the notice program as set forth in the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order satisfies the requirements of Federal Rule of Civil Procedure 23 (c) and due process and constitutes the best notice practicable under the circumstances; and (iv) enter final judgment.

## II.    OVERVIEW OF PLAINTIFF'S CLAIMS AND THE LITIGATION

This Lawsuit was filed on November 17, 2021, as a class action against Maverick and Lytx in the Circuit Court of Madison County, Illinois, Case No. 2021L001379. Specifically, the

Complaint in the Lawsuit alleges that Maverick collected its employees' biometric identifiers and biometric information without complying with Illinois' Biometric Information Privacy Act ("BIPA"), which prohibits private entities from collecting, capturing, purchasing, receiving through trade or otherwise obtaining a person's biometric identifiers or information without first providing that person with written notice of particular information and obtaining his/her written consent. ECF No. 1-2. Lytx is a developer of DriveCam technology, and Maverick is a Lytx customer and interstate motor carrier. *Id*. Plaintiff alleged that the DriveCam technology installed in each of Maverick's trucks violates BIPA by scanning drivers' faces and acquiring their biometric information, including face geometry. *Id*.

On January 10, 2022, Defendants filed a Joint Notice of Removal, removing the action from the Circuit Court of Madison County, Illinois to the United States District Court for the Southern District of Illinois (the "Court"), Case No. 3:22-cv-00046-NJR.

Following removal, Defendants filed three (3) uncontested motions to extend Defendants' time to answer or otherwise respond to the Complaint. *See* ECF Nos. 9, 15, 20. Each of these motions was granted. *See* ECF Nos. 10, 16, 21.

During this time period, the Parties engaged in an extensive exchange of information, including meeting and conferring to develop Plaintiff's Counsel's understanding of the DriveCam Technology, videoconferencing with the Senior Manager, Applied Machine Learning from Lytx to address Plaintiff's Counsel's questions, and querying and answering pages of additional, follow-up questions from Plaintiff's Counsel and Plaintiff's consultant. *See* Pulliam Decl. at ¶ 8.

On May 19, 2022, Plaintiff and Maverick filed a Notice advising the Court that they had reached, in principle, a class settlement as to the Maverick Class alleged in the Complaint. *See* ECF No. 22. Therein, the Parties jointly moved to stay the litigation with respect to Maverick—

except as it relates to finalizing the Settlement Agreement and filing a motion for preliminary approval. *Id*.

On May 20, 2022, this Court entered an order granting the Parties' request to stay the litigation as to Defendant Maverick. ECF No. 23.

Thereafter, Plaintiff's Counsel and Counsel for Maverick continued arm's length negotiations on the terms and conditions of the Settlement, exchanged several drafts of the Settlement Agreement, and conducted reasonable confirmatory discovery to verify the size of the Settlement Class and damages. Based upon the discovery conducted in this Lawsuit, as well as Plaintiff's Counsel's independent investigation of the relevant facts and applicable law, Plaintiff's Counsel determined that the Settlement is fair, reasonable, adequate, and in the best interest of the Settlement Class. Consequently, the Parties worked together to finalize, and memorialize a comprehensive set of settlement documents, which are embodied in the Settlement Agreement and the exhibits thereto (ECF No. 42-1).

On September 2, 2022, Plaintiff filed an Unopposed Motion for Preliminary Approval of Settlement (ECF No. 42), along with a memorandum of law in support (ECF No. 43). The Court entered its Preliminary Approval Order (Amended) on December 12, 2022 (ECF No. 48). In its Preliminary Approval Order (Amended), this Court (i) conditionally certified the proposed Settlement Class and appointed Plaintiff as the Settlement Class Representative and Plaintiff's Counsel as Class Counsel, (ii) determined that the requirements for preliminary approval had been satisfied and preliminarily approved the Settlement as fair, adequate, and reasonable, subject to further consideration at the Final Fairness Hearing, (iii) approved the notice program as reasonable and adequate, and (iv) scheduled a Final Approval Hearing for March 9, 2023 at 1:30 p.m.

## III.    THE SETTLEMENT

### A.    Settlement Benefits

The terms of the Settlement provide for Maverick to establish a non-reversionary, cash settlement fund of $56,800 (the "Settlement Fund") for the benefit of the Settlement Class Members. *See* Settlement Agreement (ECF No. 42-1) at ¶ 4.1. The Settlement Agreement defines the Settlement Class as follows:

> All Maverick employees who are or were Illinois residents and allegedly had their biometrics collected, captured, received, or otherwise obtained, by Maverick while within the State of Illinois during the time period of five years before the Action was filed through the date this Agreement is fully executed.

> Excluded from the Settlement Class are Maverick, along with its parents, subsidiaries, affiliates and control persons, including its officers, directors, agents, servants or employees, and the immediate family members of such persons, the named counsel in this Action, and members of the federal judiciary.

*See id*. at ¶ 2. Based on Defendant's records, the Settlement Class includes 71 current and former employees of Maverick. ECF No. 44 at ¶ 6. Unless a Settlement Class Member submits a valid and timely request for exclusion, he or she will automatically receive his or her pro rata distribution from the Settlement Fund, less any court-approved attorneys' fees and costs, service award, and costs of notice and settlement administration. *See* ECF No. 42-1 at ¶ 4.6. For any unclaimed money or uncashed checks remaining in the Settlement Fund after the first distribution (in other words, any checks that remain uncashed more than 121 days after they were mailed to Settlement Class members), a second distribution shall be made to Settlement Class Members that cashed their initial checks if economically feasible. *See id*. at ¶ 5.5.

In exchange, for the consideration from Maverick, the claims against Maverick will be dismissed with prejudice upon final approval of the Settlement, and the Settlement Class Members will thereby release all claims which have been or could have been asserted against Maverick and

other Released Parties by any member of the Settlement Class in this Lawsuit relating to privacy law, including all claims asserted in the Lawsuit and all claims arising under the Biometric Information Privacy Act, as set forth in the Settlement Agreement. *See id*. at ¶¶ 9.1-9.6. The release does not pertain to nor have any effect or impact on Plaintiff's and Settlement Class members' claims against Lytx in this Action, which remain ongoing. *See id*. at ¶ 9.1.

**B.    Notice**

In accord with the Settlement Agreement, the Court's Preliminary Approval Order (Amended), and the Court-approved notice plan, Class Counsel effectuated notice to Settlement Class Members by mailing, by first-class US mail, the Class Notice (substantially in the form attached as Exhibit B to the Settlement Agreement) on December 30, 2022. To date, a total of 72 notices have been disseminated to Settlement Class Members. This includes one notice that was returned to the Settlement Administrator as undeliverable. The Settlement Administrator was able to contact that specific Settlement Class Member via email, get an updated address, and resend the Class Notice to the updated address. *See* Pulliam Decl. at ¶¶ 14-16.

The Class Notice includes, but is not limited to, the following information: (1) a plain and concise description of the nature of the Action and the proposed Settlement, (2) the right of Settlement Class Members to request exclusion from the Settlement Class or to object to the Settlement, (3) specifics on the date, time and place of the Final Fairness Hearing, and (4) information regarding Class Counsel's fee application and the Settlement Class Representative's service award. *See id.* at ¶¶ 18, 20 and Ex. A.

On September 9, 2023, Maverick, by and through counsel, served notice of the Settlement to the appropriate federal and state officials in compliance with 28 U.S.C. § 1715. *See* ECF No. 45.

As of the filing of this memorandum, no objections have been received and only two (2) requests for exclusion have been received. *See* Pulliam Decl. at ¶¶ 19, 21.

The costs for notice and administration are currently $1,625.32, which includes out-of-pocket expenses for mailing 72 Class Notices, ordering checks in the QSF's name, costs associated with the QSF's tax returns for the years 2022 and 2023, and costs estimated for mailing individual payments. *See* Pulliam Decl. at ¶ 22.

### C.    <u>Attorneys' Fees, Litigation Costs, and a Service Award</u>

In accord with the Settlement Agreement, Class Counsel are requesting an award of attorneys' fees of one-third (33.33%) of the Settlement Fund, or $18,931.44, to compensate them for all of the work already performed in this case, all of the work remaining to be performed in connection with this Settlement, and the risks undertaken in prosecuting this case, as well as reimbursement of out-of-pocket litigation costs in the amount of $1,745.10. *See* Plaintiff's Motion for Attorneys' Fees, being filed contemporaneously herewith.

Class Counsel is also seeking a service award in the amount of $5,000 to compensate Plaintiff for his work on behalf of the Settlement Class. Maverick has agreed to pay any court-approved service award, up to $5,000, in addition to the Settlement Fund, for a Total Settlement Amount not to exceed $61,800. *See* ECF No. 42-1 at ¶ 8.3.

## IV.    APPLICABLE LEGAL STANDARDS

Rule 23(e) requires court approval for a class action settlement to ensure that it is fair, reasonable and adequate. Fed. R. Civ. P. 23(e). A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery. *Am. Int l Grp., Inc. v. ACE INA Holdings, Inc*., No. 07 CV 2898, 2012 WL 651727, at *10 (N.D. Ill. Feb. 28, 2012) (citation and

internal quotation marks omitted). Courts favor the resolution of a class action by way of settlement and will approve such a settlement if it is fair, reasonable, and adequate when viewed in its entirety. *In re Mexico Money Transfer Litig. (W. Union & Valuta)*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000), *aff'd sub nom., In re Mexico Money Transfer Litig.*, 267 F.3d 743 (7th Cir. 2001); *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884 (7th Cir. 1985); *Gautreaux v. Pierce*, 690 F.2d 616, 631 (7th Cir. 1982). Courts "do not focus on individual components of the settlement but rather view them in their entirety in evaluating their fairness." *Isby*, 75 F.3d at 1199 (quoting *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 315 (7th Cir. 1980)).

In determining whether a proposed settlement is fair, reasonable, and adequate, courts are to consider whether:

    (A) the class representatives and class counsel have adequately represented the class;

    (B) the proposal was negotiated at arm's length;

    (C) the relief provided for the class is adequate, taking into account:

        (i)    the costs, risks, and delay of trial and appeal;

        (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

        (iii)  the terms of any proposed award of attorney's fees, including timing of payment; and

        (iv)  any agreement required to be identified under Rule 23(e)(3); and

    (D) the proposal treats class members equitably relative to each other.

FRCP 23 (e)(2).

These factors are substantially similar to those adopted by both the Seventh Circuit and courts in Illinois. *See Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082

(7th Cir. 1997) (identifying the following factors that a court may consider in evaluating the fairness of a class action settlement: (1) the strength of plaintiffs' case compared to the amount of defendants' settlement offer; (2) the complexity, length, and expense of continued litigation; (3) the amount of opposition to the settlement among affected parties; (4) the opinion of competent counsel, (5) the stage of the proceedings; and (6) the amount of discovery completed); *In re Cap. One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 788 (N.D. Ill. 2015) (same). Because the Seventh Circuit has endorsed an overriding public interest in favor of the settling of litigation, particularly class actions, *see Isby*, 75 F.3d at 1196 ("[f]ederal courts naturally favor the settlement of class action litigation"), the proceedings to approve a settlement should not be transformed into an abbreviated trial on the merits. *See, e.g., Mars Steel Corp. v. Cont l Ill. Nat l Bank & Trust Co.*, 834 F.2d 677, 684 (7th Cir. 1987).

In addition, a "strong presumption of fairness attaches to a settlement agreement" when it is the result of arm's length negotiation. *Great Neck Capital Appreciation Inv. P ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 410 (E.D. Wis. 2002) (citing *Anderson v. Torrington Co.*, 755 F. Supp. 834, 838 (N.D. Ind. 1991)). In evaluating a proposed settlement, courts must also "recognize[] that the essence of settlement is compromise and will not represent a total win for either side." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d at 1014 (citing *Isby*, 75 F. 3d at 1200).

## V. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, WARRANTING FINAL APPROVAL.

### A. Plaintiff and Class Counsel Have Adequately Represented the Class, Obtaining an Excellent Settlement to Which No Class Member or Government Entities Have Objected.

Both Plaintiff and Class Counsel have adequately represented the Settlement Class in this case. The Plaintiff has adequately represented all Settlement Class Members in this action by

achieving a Settlement that provides for a cash common fund of $56,800, and yielding individual payments to eligible Settlement Class Members in an estimated amount of approximately $506. *See* Pulliam Decl. at ¶¶ 5, 23. It is Class Counsel's informed opinion that this Settlement represents an excellent result and is in the best interest of the Class. *See* Pulliam Decl. at ¶¶ 5-11; *see, e.g., Charvat v. Valente*, No. 12-CV-05746, 2019 WL 5576932, at *5 (N.D. Ill. Oct. 28, 2019) (approving TCPA settlement yielding average consumer payout of $22.17 and finding class members will receive such payments without having "to endure the time, expense, and uncertainty of litigation.").

In addition, Plaintiff has been actively involved throughout the course of the litigation and settlement, assisting Class Counsel in investigating claims on an individual basis, reviewing case documents, remaining apprised of the litigation, and overseeing settlement negotiations. Moreover, Plaintiff's efforts, including the risks he voluntarily took as well as the time he expended supporting the litigation, were crucial to achieving the result for the Settlement Class. *See* Pulliam Decl. at ¶ 30.

Class Counsel have also fully and adequately represented all members of the Settlement Class. Class Counsel diligently litigated this case including: (a) extensive pre-filing investigation and research; (b) drafting and filing the complaint; (c) meeting-and-conferring with Defendant's counsel regarding various case management matters; (d) protracted settlement discussions with Defendant's counsel; (e) conducting informal discovery to ensure identification of all Settlement Class Members and damages; and (f) drafting a comprehensive settlement agreement and exhibits. *See* Pulliam Decl. at ¶¶ 8-9. Thus, Plaintiff's and Class Counsel's efforts demonstrate that they vigorously and zealously represented the Settlement Class. *See Charvat*, 2019 WL 5576932, at *5.

Lastly, to date, no Settlement Class Member has objected to the Settlement. *See* Pulliam Decl. at ¶ 21. And, while no governmental entity is a party to this litigation, notice was issued to the appropriate federal and state officials in accordance with the 28 U.S.C. § 1715, and to date, no governmental entity has raised an objection or concern about the Settlement. *See* Pulliam Decl. at ¶ 21; ECF No. 45. Accordingly, these factors weigh in favor of final approval.

**B.     The Settlement Was the Result of Informed, Arm's Length Negotiations Between the Parties.**

This case involves detailed factual and legal issues involving the collection of biometric identifiers or biometric information and BIPA's statutory framework. Following removal to this Court, the parties engaged in extensive informal discovery, including meeting and conferring to develop Plaintiff's Counsel's understanding of the DriveCam Technology, videoconferencing with the Senior Manager, Applied Machine Learning from Lytx to address Plaintiff's Counsel's questions, and querying and answering pages of additional, follow-up questions from Plaintiff's Counsel and Plaintiff's consultant. *See* Pulliam Decl. at ¶ 8. During this process, Defendants filed three (3) uncontested motions to extend Defendants' time to answer or otherwise respond to the Complaint, each of which was granted by the Court. *See* ECF Nos. 9, 10, 15, 16, 20, 21. Thus, for months the parties worked to explore each side's understanding of the claims and defenses involved in this case. Hence, while the Settlement was reached at a relatively early stage of the proceedings, counsel for each of the respective parties were fully informed and intimately familiar with the strengths and weaknesses of their client's positions.

Moreover, counsel for both sides are experienced litigators. They used their skill and expertise to advance their client's respective position and secure a mutually agreeable resolution that provides immediate benefits to Class members and avoids the risks, time, and expense of protracted litigation. Even after reaching an agreement in principle, Counsel for the parties

engaged in further exchanges of information to confirm the size of the Settlement Class and damages and to negotiate the specific terms of the Settlement, which included the exchange of various versions of the Settlement Agreement and exhibits. *See* Pulliam Decl. at ¶ 9. Accordingly, the Settlement is the product of extensive, arm's length negotiations between informed counsel and supports approval. *Owens v. GLH Cap. Enter., Inc.*, No. 16-CV-1109-NJR-SCW, 2018 WL 1240461, at *2 (S.D. Ill. Mar. 9, 2018).

### C.     The Settlement Provides Exceptional Relief for the Settlement Class,

When determining if the relief provided for the class is adequate, Rule 23 instructs courts to take into account "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23 (e)(2). Consideration of each of these sub-factors weighs in favor of final approval.

### 1.     The Complexity, Cost, and Expense of Continued Litigation Supports Approval of the Settlement.

While Plaintiff has calculated the maximum value of the claims in this Action to be larger than the settlement amount, when the maximum value of Plaintiff's and the Class's claims are discounted by the identifiable risks, experience dictates that the interests of the Class are better served by the proposed Settlement. *See Goldsmith v. Tech. Sols. Co.*, No. 92-cv-4374, 1995 WL 17009594, at *4 (N.D. Ill. Oct. 10, 1995) ("As courts recognize, a dollar obtained in settlement today is worth more than a dollar obtained after a trial and appeals years later."); *Noll v. eBay, Inc.*, 309 F.R.D. 593, 606 (N.D. Cal. 2015) ("Immediate receipt of money through settlement, even if lower than what could potentially be achieved through ultimate success on the merits, has value to a class, especially when compared to risky and costly continued litigation."); *see also West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079

(2d Cir. 1971) ("In considering the proposed compromise, it seems also to be of importance that (if approved) the substantial amounts of money are available for class members now, and not at some distant time in the future. The nature of these actions is such that a final judgment, assuming it to be favorable, could only be obtained after years of expensive litigation. It has been held proper 'to take the bird in hand instead of a prospective flock in the bush.'"); *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993) (noting that even a favorable jury verdict "is not a guarantee of ultimate success").

Here, the risks of continued litigation are substantial. Plaintiff bears the burden at trial of proving that the data Defendant collected constituted "biometric identifiers" or "biometric information" within the meaning of BIPA. Defendant has vigorously denied Plaintiff's allegations of wrongdoing and contends that the data it allegedly collected does not violate BIPA. In addition, there is the risk that Defendant would be able to establish consent, a complete defense to Plaintiff's claims. As such, Plaintiff anticipates that Defendant would likely file such case dispositive motions as a motion to dismiss and/or a motion for summary judgment had the case continued. Given the highly technical issues involved, the result of such motions or a trial is by no means a foregone conclusion as this Court or a jury could side with Defendant, resulting in dismissal of one or more of Plaintiff's BIPA claims, or of the case in its entirety.

Further, Plaintiff anticipates that Defendant would likely have vigorously opposed class certification and would have undoubtedly appealed any order granting class certification. And based on Defendant's defenses, whether Plaintiff's would be able to meet the higher threshold of a willful violation of BIPA is unknown. Thus, continued litigation of the Action would have been lengthy and expensive, and the possibility of Plaintiff maintaining this case on a class basis or being able to establish damages over the amount offered in settlement is an uncertainty. *See Guippone v. BH S&B Holdings LLC*, No. 09 Civ. 01029 (CM), 2016 WL 5811888, at *7 (S.D.N.Y. Sep. 23, 2016) (observing "the risk of maintaining a class through trial is present in any class action."); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 361 (S.D.N.Y. 2002) ("Plaintiffs' Counsel were aware that many of the defenses that had been or would be asserted by

the various Defendants had some possibility of success. This uncertainty made the outcome of the case problematic, especially when weighed against the immediate and tangible benefits conferred by the Settlement.").

Moreover, even if Plaintiff were to prevail through continued litigation and trial, he would still face significant risks as an appeal by Defendant would be likely. "It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced." *West Virginia*, 314 F. Supp. at 743-44. For example, in *In re Apple Computer Sec. Litig.*, No. C-84-20148-(A)-JW, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991), the jury rendered a verdict in favor of plaintiffs and found recoverable damages in excess of $100 million. Nonetheless, the trial court disagreed and overturned the verdict, entering a judgment notwithstanding the verdict for the individual defendants and ordering a new trial with regard to the corporate defendant. *Id*.

Against these risks, the possibility of future relief that is greater than the relief provided for through Settlement is an unknown. Thus, the value of immediate recovery guaranteed through the Settlement outweighs the uncertainty and expense of protracted litigation. *See Smith v. CRST Van Expedited, Inc.*, No. 10-CV-1116-IEG (WMC), 2013 U.S. Dist. LEXIS 6049, at *9-10 (S.D. Cal. Jan. 14, 2013) ("[T]he actual recovery realized and risks avoided here outweigh the opportunity to pursue potentially more favorable results through full adjudication").

Accordingly, consideration of the foregoing weighs in favor of final approval.

2.    *The Settlement Provides Meaningful, Automatic Payments to Settlement Class Members.*

As noted above, under the Settlement, each Settlement Class Member is entitled to an automatic payment of his or her pro rata distribution unless he or she submits a timely request for exclusion. Moreover, the relief provided to Settlement Class Members under the Settlement is significant. As previously noted, the Settlement creates a Settlement Fund of $56,800, which is currently estimated to yield individual payments to eligible Settlement Class Members of

14

approximately $506. *See* Pulliam Decl. at ¶ 23. Thus, the Settlement provides meaningful relief with no obligation that requires a Settlement Class Member to submit a claim form in order to receive benefits. As such, the method to distribute relief is both simple and efficient. *See Chambers v. Together Credit Union*, No. 19-CV-00842-SPM, 2021 WL 1948453, at *2 (S.D. Ill. May 14, 2021).

       3.     *The Requested Attorneys' Fees Are Reasonable and In Line With Similar Awards Approved in the Seventh Circuit.*

As detailed in Plaintiff's Motion for Attorneys' Fees, Class Counsel requests an award of attorneys' fees of $18,931.44, which represents one-third of the Settlement Fund. *See* Plaintiff's Motion for Attorneys' Fees at pp. 6-11; Pulliam Decl. at ¶¶ 24-27. Further, pursuant to the Settlement Agreement, Class Counsel will not receive any payment until after the Effective Date, defined therein as the later of 35 days after the date of the Final Approval Order, if no objections or appeal, or if an appeal, than the later of either the termination of such appeal on terms that affirm the Final Approval Order or the expiration of time to obtain any further appellate review of the Final Approval Order. *See* ECF No. 42-1 at ¶¶ 8.4, 26. Thus, the percentage requested and the timing of the payment also weigh in favor of final approval.

       4.     *There Are No Side Agreements.*

No side agreement involving Class Counsel or the Settlement Class Representative was made in connection with the Settlement.

Thus, consideration of each of the four subfactors of Rule 23(e)(2) weigh in favor of final approval.

**D.    The Settlement Treats All Settlement Class members Equitably.**

Under the Settlement, there is no unfair or preferential treatment of any Settlement Class Member. Payments to Settlement Class Members will be made on a *pro rata* basis. Thus, each

Settlement Class Member is given fair and equal treatment. *See Chambers v. Together Credit Union*, No. 19-CV-00842-SPM, 2021 WL 1948453, at *2 (S.D. Ill. May 14, 2021) ("the proposal treats the Class members equitably to one another because the Net Settlement Fund will be divided pro rata . . . .").

**E.      The Notice Program Satisfies Rule 23 and Due Process and Constitutes the Best Notice Practicable.**

The Court has already determined that the notice program in this case adequately satisfies Rule 23, and due process. ECF No. 48 at ¶ 4. The Settlement Administrator has now fully implemented the notice program. Notice was mailed to each of the 71 Settlement Class Members in accord with this Court's Preliminary Approval Order (Amended). Of the 71 notice packets mailed, one notice packet was returned as undeliverable. The Settlement Administrator was able to contact this specific Settlement Class Member via email, ascertain an updated address, and mail a notice packet to the Settlement Class Member's updated address. *See* Pulliam Decl. at ¶¶ 12-16. Thus, the notice reach in this case is at the higher end of the normal range of 70-95% endorsed by the Federal Judicial Center. *See id*.; *see also* MANAGING CLASS ACTION LITIGATION: A POCKET GUIDE FOR JUDGES, p. 27 (3d ed. 2010) (the norm is in the 70-95% range).

Further, to date, there have been no objections and only two (s) requests for exclusion. *See* Pulliam Decl. at ¶¶ 19, 21. What is more, the Settlement Administrator continues to maintain the toll-free phone line and be available to respond to inquiries from Settlement Class Members. *Id*. at ¶ 17. Accordingly, the Class Notice provided to Settlement Class Members fulfills all of the requirements of Rule 23 and due process and constitutes the best notice practicable under the circumstances.

**VI.      FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE.**

In its Preliminary Approval Order (Amended, the Court provisionally certified the Settlement Class upon concluding all of the requirements of Rule 23 (a) and (b)(3) were satisfied. Specifically, the Court found as follows: (1) "There are 71 Settlement Class Members, which is too numerous for joinder to be practicable" (ECF No. 48 at ¶ 5(a)); (2) "Common questions of law and fact—whether Maverick violated the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, et seq., ("BIPA")— predominate and turn on legal and factual questions applicable to each class member" (*id.* at ¶ 5(b)); (3) "Plaintiff's claims are typical of the claims of the Settlement Class" (*id.* at ¶ 5(c)); (4) "Plaintiff is an adequate class representative. His interests align with the other Settlement Class Members. Proposed class counsel has experience and expertise bringing class actions and have committed the necessary resources to represent the Rule 23 Settlement Class" (*id.* at ¶ 5(d)); and (5) "A class action is a superior method for resolution of this matter" (*id.* at ¶ 5(e)). For these same reasons, this Court should grant final certification of the Settlement Class for settlement purposes only.

## VII.    CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that the Court enter an order (i) granting final approval of the Settlement as fair, reasonable, and adequate; (ii) granting final certification to the Settlement Class; (iii) finding that the notice program as set forth in the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order (Amended) satisfies the requirements of Federal Rule of Civil Procedure 23 (c) and due process and constitutes the best notice practicable under the circumstances; and (iv) entering final judgment.

Dated:  January 27, 2023                    Respectfully submitted,


                                            */s/ Randall K. Pulliam*
                                            Randall K. Pulliam, (admitted pro hac vice)
                                            rpulliam@cbplaw.com

Samuel R. Jackson (admitted pro hac vice)
sjackson@cbplaw.com
CARNEY BATES AND PULLIAM, PLLC
519 West 7th Street
Little Rock, AR 72201
Telephone: (501) 312-8500
Facsimile: (501) 312-8505

And

J. Dominick Larry
NICK LARRY LAW LLC
1720 W. Division St.
Chicago, IL 60622
Telephone: 773.694.4669
Facsimile: 773.694.4691
nick@nicklarry.law

*Attorneys for Plaintiff and the Proposed Settlement Class*


## CERTIFICATE OF SERVICE

I hereby certify that on January 27, 2023, a true and correct copy of the foregoing was electronically filed using the Court's CM/ECF filing system, which will send electronic notification to the parties and registered attorneys of record that the document has been filed and is available for viewing and downloading.

*/s/ Randall K. Pulliam*
Randall K. Pulliam