## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSHUA LEWIS, individually and on behalf of all others similarly situated,<br><br>           Plaintiff,<br><br>           v.<br><br>MAVERICK TRANSPORTATION LLC and LYTX, INC.,<br><br>           Defendants. | Case No.  3:22-cv-00046-NJR<br>Hon. Chief Judge Nancy J. Rosenstengel |

**MEMORANDUM IN SUPPORT OF
PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANT
LYTX, INC.**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     OVERVIEW OF PLAINTIFFS' CLAIMS AND THE LITIGATION ............................ 2

    A.      *Lewis v. Maverick Transportation, LLC, et al.* ......................................... 2

        1.      Plaintiff Lewis' initial complaint and initial informal discovery.............. 2

        2.      Plaintiff Lewis resolves his claims against Defendant Maverick. ............ 2

        3.      The Court denies Lytx's motion to dismiss in full. .................................. 2

        4.      Initial discovery in the *Lewis* Action ...................................................... 3

    B.      The *Cavanaugh and Timmons v. Lytx, Inc., et al.* Actions .................................. 3

        1.      The *Cavanaugh* Action ........................................................................ 3

        2.      The *Timmons* Action ........................................................................... 4

        3.      The *Cavanaugh* and *Timmons* Actions are consolidated, and Lytx and GMT move to dismiss Plaintiffs' Amended Complaint. ................... 4

    C.      Joint Mediation and Settlement Agreement ........................................................... 5

III.    THE SETTLEMENT TERMS ............................................................................ 6

    A.      The Settlement Class ............................................................................ 6

    B.      Monetary Settlement Payment ............................................................... 7

    C.      The Class Notice Plan .......................................................................... 7

    D.      Settlement Administration .................................................................... 8

    E.      Opportunity to Opt-Out and Object, and Appear at Hearing ............................... 8

    F.      Scope of Release ................................................................................... 8

    G.      Attorneys' Fees, Litigation Costs, and a Service Award ...................................... 9

    H.      Leave to File an Amended Complaint ................................................................. 9

IV.     LEGAL STANDARD ........................................................................................ 9

V.      ARGUMENT ................................................................................................. 11

    A.      The Proposed Settlement Satisfies the Standards for Preliminary Approval ...... 11

        1.      Plaintiffs and their Counsel zealously represented the Class................... 11

        2.      The Settlement is the result of arm's-length negotiation by experienced counsel and is informed by targeted discovery. ................. 12

        3.      The Settlement represents a strong result for the Class, particularly given the substantial risk and challenges the Class faces. ....................... 13

**TABLE OF CONTENTS**
**(continued)**

Page

4. The effectiveness of any proposed method of distributing relief to the Settlement Class, including the method of processing claims. .......... 15

5. Class Counsel's request for attorneys' fees is in line with Seventh Circuit standards. ................................................................. 16

6. There are no undisclosed side agreements. .............................................. 17

7. The Settlement treats Settlement Class Members equitably.................... 17

B. Conditional Certification of the Settlement Class Is Appropriate ...................... 18

1. Plaintiffs satisfy the four Federal Rule of Civil Procedure 23(a) prongs. ................................................................................. 18

2. The requirements of Rule 23(b)(3) are satisfied. ..................................... 21

VI. THE PROPOSED NOTICE PLAN COMPLIES WITH RULE 23 AND DUE PROCESS ................................................................................................ 22

VII. LEAVE TO AMEND COMPLAINT SHOULD BE GRANTED.................................. 24

VIII. SCHEDULING AND FINAL APPROVAL HEARING ................................................. 24

IX. CONCLUSION.................................................................................................. 25

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) .................................................................................18, 21, 22

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013) ..........................................................................................19

*Armstrong v. Bd. of Sch. Dirs.*,
  616 F.2d 305 (7th Cir. 1980) .............................................................................10

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
  270 F.R.D. 330 (N.D. Ill. 2010) ........................................................................11

*Bradford Hammacher Grp., Inc., Emp. Stock Ownership Plan v. Reliance Tr. Co.*,
  No. 1:16-cv-04773, 2020 WL 13645290 (N.D. Ill. Mar. 12, 2020) ..................10

*Briggs v. PNC Fin. Servs. Grp., Inc.*,
  No. 1:15-cv-10447, 2016 WL 7018566 (N.D. Ill. Nov. 29, 2016) .....................18

*In re Cap. One Tel. Consumer Prot. Act Litig.*,
  80 F. Supp. 3d 781 (N.D. Ill. 2015) ...................................................................15

*Carnegie v. Household Int'l., Inc.*,
  376 F.3d 656 (7th Cir. 2004) .............................................................................22

*Chambers v. Together Credit Union*,
  No. 19-cv-00842-SPM, 2021 WL 1948452 (S.D. Ill. May 14, 2021) ................16

*Charvat v. Valente*,
  No. 12-cv-05746, 2019 WL 5576932 (N.D. Ill. Oct. 28, 2019) .........................13

*Furman v. At Home Stores LLC*,
  No. 1:16-cv-08190, 2017 WL 1730995 (N.D. Ill. May 1, 2017).......................17

*In re Herff Jones Data Breach Litig.*,
  No. 1:21-cv-1329-TWP-DLP, 2022 WL 474696 (S.D. Ind. Jan. 12, 2022)..........11

*Hollins v. Church Church Hittle + Antrim*,
  No. 2:20-cv-305-JD, 2023 WL 4397769  (N.D. Ind. July 7, 2023)......................11

*Kizeart v. Peabody Gateway N. Mining, LLC*,
  No. 3:23-cv-00515-NJR, 2024 WL 3595460 (S.D. Ill. July 30, 2024) ..............17

## TABLE OF AUTHORITIES
### (continued)

Page

*Kramer v. Am. Bank & Tr. Co.*,
No. 11-cv-8758, 2017 WL 1196965 (N.D. Ill. Mar. 31, 2017) ..............................20

*Mangone v. First USA Bank*,
206 F.R.D. 222 (S.D. Ill. 2001) ..............................................................................22

*Messner v. Northshore Univ. HealthSys.*,
669 F.3d 802 (7th Cir. 2012) ..................................................................................21

*Mullins v. Direct Digit., LLC*,
795 F.3d 654 (7th Cir. 2015) ..................................................................................23

*O'Connor v. Uber Techs., Inc.*,
Nos. 13-cv-03826, 15-cv-00262, 2019 WL 1437101 (N.D. Cal. Mar. 29, 2019) .......................................................................................................................11

*Orr v. Shicker*,
953 F.3d 490 (7th Cir. 2020) ..................................................................................18

*Parris v. Meta Platforms, Inc.*,
No. 2023LA000672 (Ill. Cir. Ct.) ............................................................................16

*Retired Chi. Police Ass'n v. City of Chicago*,
7 F.3d 584 (7th Cir. 1993) ......................................................................................20

*Roberts v. Graphic Packaging Int'l, LLC*,
No. 3:21-cv-00750-DWD, 2024 WL 3373780 (S.D. Ill. July 11, 2024) ..................9

*Rosario v. Livaditis*,
963 F.2d 1013 (7th Cir. 1992) ................................................................................19

*Rosenbach v. Six Flags Entm't Corp.*,
No. 16-CH-13 (Ill. Cir. Ct.) ....................................................................................15

*Schleicher v. Wendt*,
618 F.3d 679 (7th Cir. 2010) ..................................................................................19

*Seiden v. Nicholson*,
72 F.R.D. 201 (N.D. Ill. 1976) ................................................................................14

*Stewart v. Marshall Etc., Inc.*,
No. 14-cv-1002-NJR-PMF, 2015 WL 5120817 (S.D. Ill. Aug. 28, 2015) ..............24

## TABLE OF AUTHORITIES
### (continued)

Page

*Suchanek v. Sturm Foods, Inc.*,
 764 F.3d 750 (7th Cir. 2014) ................................................22

*T.K. Through Leshore v. Bytedance Tech. Co.*,
 No. 19-cv-7915, 2022 WL 888943 (N.D. Ill. Mar. 25, 2022) ................12

*In re TikTok, Inc., Consumer Priv. Litig.*,
 565 F. Supp. 3d 1076 (N.D. Ill. 2021) ................................10

*In re TikTok, Inc., Consumer Priv. Litig.*,
 617 F. Supp. 3d 904 (N.D. Ill. 2022) ..............................12, 16

*Tyson Foods, Inc. v. Bouaphakeo*,
 577 U.S. 442 (2016) ....................................................21

*Wagner v. NutraSweet Co.*,
 95 F.3d 527 (7th Cir. 1996) ............................................20

*Wal-Mart Stores, Inc. v. Dukes*,
 564 U.S. 338 (2011) ....................................................19

*Young v. Rolling in the Dough, Inc.*,
 No. 1:17-cv-07825, 2020 WL 969616 (N.D. Ill. Feb. 27, 2020) ............18

*Zhu v. Wanrong Trading Corp.*,
 No. 18-cv-417, 2024 WL 4351357 (E.D.N.Y. Sept. 30, 2024) ..............17

**Court Rules**

Fed. R. Civ. P. 15(a)(2) ..................................................24

Fed. R. Civ. P. 23(a)(1) ..................................................18

Fed. R. Civ. P. 23(a)(3) ..................................................19

Fed. R. Civ. P. 23(b)(3) ................................................21, 22

Fed. R. Civ. P. 23(b)(3)(D) ..............................................22

Fed. R. Civ. P. 23(c)(2)(B) ..............................................23

Fed. R. Civ. P. 23(e)(1)(ii) ..............................................18

**TABLE OF AUTHORITIES**
**(continued)**

Page

Fed. R. Civ. P. 23(e)(1)(B) .................................................................22

Fed. R. Civ. P. 23(e)(2)(C) .................................................................13

Fed. R. Civ. P. 23(e)(2)(C)(ii) ............................................................15

Fed. R. Civ. P. 23(e)(2)(C)(iii) ...........................................................16

Fed. R. Civ. P. 23(e)(2)(D) ...........................................................16, 17

Fed. R. Civ. P. 23(e)(3) .......................................................................17

Fed. R. Evid. 408 ..................................................................................6

**Treatises**

*Manual for Complex Litigation* § 21.633 (4th ed. 2024)............................22

4 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 13:13 (6th
   ed. 2024) ..........................................................................................10

**Other Authorities**

NBC Chicago (June 7, 2024), https://www.nbcchicago.com/news/local/payments-
   begin-for-class-action-instagram-settlement-in-illinois-what-to-
   know/3457848/ .................................................................................16

## I.    <u>INTRODUCTION</u>

After more than three years of litigation, surviving a motion to dismiss in full, initial targeted discovery, and a full-day mediation, Plaintiffs Joshua Lewis, James Cavanaugh, and Nathaniel Timmons ("Plaintiffs" or "Class Representatives") respectfully move the Court for preliminary approval of the Settlement reached with Defendant Lytx, Inc. ("Defendant" or "Lytx") in this matter.[1] This Settlement fully resolves this Action, along with Plaintiffs Cavanaugh and Timmons' claims against Lytx in *Cavanaugh v. Lytx, Inc.*, No. 1:21-cv-05427 (N.D. Ill.) ("*Cavanaugh* Action"), which alleges that Lytx's DriveCam® Event Recorder ("DriveCam") and related technology violate the Illinois Biometric Information Privacy Act ("BIPA").

The Settlement requires Lytx to pay $4,250,000 into a non-reversionary, common fund (the "Settlement Fund"), from which Class Members who file timely and valid Claim Forms will receive a Cash Award. The Settlement is the result of serious, informed, and arm's-length negotiations led by experienced counsel and is a result of zealous advocacy by counsel for both parties, as well as Class Representatives. The Settlement treats all members of the Class equitably; it allocates 50% of the Settlement Fund to Illinois residents and 50% of the Settlement Fund to a larger group of non-Illinois residents to account for the fact that non-Illinois residents face a potential extraterritoriality argument.

Plaintiffs respectfully seek preliminary approval of the Settlement, a holding that the Court will likely certify the Settlement Class, and approval to send notice to the Class describing the Settlement and an opportunity to claim, opt-out, object, or otherwise be heard. The Settlement satisfies all criteria for preliminary approval.

---

[1] Any undefined capitalized terms have the meaning attributed to them in the Parties' Class Action Settlement Agreement and Release ("Agmt.").

## II.    OVERVIEW OF PLAINTIFFS' CLAIMS AND THE LITIGATION

### A.    *Lewis v. Maverick Transportation, LLC, et al.*

#### 1.    Plaintiff Lewis' initial complaint and initial informal discovery.

This class action was filed on November 17, 2021 in the Circuit Court of Madison County, Illinois (Case No. 2021L001379) against Maverick Transportation, LLC ("Maverick") and Lytx. Mr. Lewis alleges that Lytx, through its inward-facing dashboard cameras, collects the biometric identifiers and biometric information of its customers' drivers without complying with BIPA's requirements that it provide proper notice and written consent before doing so. Lytx's product that allegedly violates BIPA is known as the DriveCam and the technology it employs is known as machine vision and artificial intelligence ("MV+AI"). Lytx is a developer of DriveCam technology, and Maverick is a Lytx customer and interstate motor carrier.

On January 10, 2022, Defendants removed this action from the Circuit Court of Madison County, Illinois to this Court. *See* ECF No. 1.

Thereafter, the Parties engaged in informal discovery prior to Defendants' response to the complaint regarding the technology at issue, including a video conference with Lytx's Senior Manager of Applied Machine Learning. *See* Joint Declaration of Randall K. Pulliam, Sean A. Petterson, and David Fish ("Joint Decl."), ¶31.

#### 2.    Plaintiff Lewis resolves his claims against Defendant Maverick.

On May 19, 2022, Plaintiff Lewis and Maverick notified the Court they had reached an agreement on a settlement for $56,800. *See* ECF No. 22. On March 9, 2023, the Court granted final approval of a class action settlement between Plaintiff Lewis and Maverick that resolved all claims against Maverick and dismissed it from the case. *See* ECF No. 6.

#### 3.    The Court denies Lytx's motion to dismiss in full.

On December 19, 2022, Lytx filed a motion to dismiss, with a supporting memorandum of

law (*see* ECF Nos. 49-51), which Mr. Lewis opposed (*see* ECF No. 52). Lytx argued that Mr. Lewis had not adequately pled that its DriveCam technology is capable of facial recognition or that it relies on biometric identifiers to identify individuals in violation of BIPA. *See* ECF No. 50. Mr. Lewis' opposition explained that BIPA does not require that biometric identifiers be used to identify an individual, but that even if the law had such a requirement, he adequately alleges that the DriveCam scanned his and other class members' facial geometry (a biometric identifier) for identification purposes. *See* ECF No. 52.

On June 26, 2023, the Court denied Lytx's motion to dismiss in full. *See* ECF No. 68. It held that BIPA does not require biometric identifiers be used to identify a person. *Id*. Lytx filed its Answer on August 7, 2023 (*see* ECF No. 79), which it subsequently amended (*see* ECF No. 83).

### 4. Initial discovery in the *Lewis* Action

After denying Lytx's motion to dismiss, Mr. Lewis and Lytx engaged in targeted initial discovery. In particular, Mr. Lewis served 68 discovery requests, 22 interrogatories, and 30 requests for admission. Joint Decl. ¶32. After Lytx made an initial production, Plaintiff deposed Vincent Nguyen, a key senior machine learning scientist on April 17, 2024. *Id.* ¶33.

Further, the Parties met and conferred extensively over a number of discovery issues, including an ESI protocol, the completeness of Lytx's document productions, appropriate custodians, and scheduling depositions. *Id.* ¶34. These disputes were pending when the Parties agreed to mediation. *See* ECF Nos. 94 & 98.

### B. The *Cavanaugh and Timmons v. Lytx, Inc., et al.* Actions

In parallel to this Action, there were two other related actions pending against Lytx also alleging that it collected biometric information and biometric identifiers in violation of BIPA.

### 1. The *Cavanaugh* Action

Specifically, on October 13, 2021, Plaintiff James Cavanaugh filed a class action lawsuit

against Lytx in the United States District Court for the Northern District of Illinois alleging that
Lytx violated BIPA by not obtaining consent from Mr. Cavanaugh and Class members before
collecting biometric information and biometric identifiers. *See Cavanaugh* Action, ECF No. 1.

In early 2022, as it did in this Action, Lytx provided informal discovery explaining its
DriveCam and MV+AI technology to Plaintiff Cavanaugh. Joint Decl. ¶36. This informed Plaintiff
Cavanaugh's understanding of the technology at issue.

### 2.    The *Timmons* Action

On December 29, 2021, Plaintiff Nathaniel Timmons filed a class action lawsuit against
his employer, Gemini Motor Transport L.P. ("GMT") and Lytx in the Circuit Court of Morgan
County, Illinois, also alleging that they violated BIPA by collecting his biometric information and
identifiers without obtaining his written consent. On February 11 2022, Defendants removed the
action to the United States District Court for the Central District of Illinois. *See Timmons v. Lytx
Inc., et al.*, No. 1:22-cv-05068 (N.D. Ill.) (the "*Timmons* Action"), ECF No. 1.

In early 2022, Lytx provided informal discovery to Plaintiff Timmons, explaining its
technology. Joint Decl. ¶39. This consisted of letters from Lytx's counsel, detailing why it believed
its machine vision and artificial intelligence system did not constitute facial recognition
technology. *Id*. Lytx also provided specifications and other internal documents that laid out the
high-level functionality of its technology. *Id.* ¶40. This informed Plaintiff Timmons'
understanding of the technology at issue. *Id.* ¶41.

### 3.    The *Cavanaugh* and *Timmons* Actions are consolidated, and Lytx and GMT move to dismiss Plaintiffs' Amended Complaint.

On June 28, 2022, Lytx moved to transfer the *Timmons* Action to the Northern District of
Illinois or, alternatively, to stay the action. Mr. Timmons opposed this motion, but indicated he
would not oppose transfer to the Northern District of Illinois if the *Timmons* Action was

consolidated into the *Cavanaugh* Action. Thereafter, the *Timmons* Action was reassigned to the Hon. Edmond Chang and related to the *Cavanaugh* Action under Local Rule 40.4. *See Cavanaugh* Action, ECF No. 38.

Subsequently, on November 10, 2022, after the Court appointed Co-Lead Counsel, Plaintiffs Cavanaugh and Timmons filed a Consolidated Amended Complaint against Lytx and GMT. *See id.*, ECF No. 49. GMT objected to Plaintiffs' request for consolidation of the *Cavanaugh* and *Timmons* Actions. *See id.*, ECF No. 48. On February 29, 2024, the Court overruled GMT's objection to consolidation and denied its request for severance and a stay of claims against it. *See id.*, ECF No. 87.

On April 12, 2024, Lytx and GMT filed a joint motion to dismiss (*see id.*, ECF Nos. 92 & 93), which Plaintiffs Cavanaugh and Timmons opposed (*see id.*, ECF No. 100). Lytx primarily argued that Plaintiffs' claims were preempted by various federal laws and regulations, that application of BIPA to non-Illinois citizens would be an impermissible extraterritorial application of the law, and that Plaintiffs failed to plead facts showing that Defendants collect biometric information. *See id.* ECF No. 93. In response, Plaintiffs argued that, like numerous other BIPA cases, their claims were not preempted, that BIPA applied to conduct within the State of Illinois, regardless of a class member's residency, and that they had adequately pled the DriveCam collects biometric information. *See id.*, ECF No. 100. That motion was fully briefed as of July 15, 2024 and remains pending against GMT only, as the Court granted the Plaintiffs' and Lytx's October 23, 2024 joint motion to stay claims against Lytx pending this Settlement. *See id.*, ECF No. 115.

### C.    Joint Mediation and Settlement Agreement

In July 2024, the Parties in the *Lewis* and *Cavanaugh* Actions separately and independently agreed to mediate with Lytx. Joint Decl. ¶48. Thereafter, at Lytx's request, Plaintiffs' Counsel in the two cases agreed to a joint mediation before the Honorable James Epstein (Ret.) of JAMS. *Id.*

¶49. As part of that mediation, Lytx provided further informal discovery pursuant to Federal Rule of Evidence 408. *Id.* ¶50.

On September 12, 2024, the Parties held a full-day mediation with Judge Epstein. *Id.* ¶51. The mediation concluded with a mediator's proposal, which the Parties accepted on September 20, 2024. *See* Joint Decl. ¶51; ECF No. 113.

On October 7, 2024, the Parties informed the Court that they were in the process of finalizing a term sheet. *See* ECF No. 115. On October 14, 2024, the Parties agreed to a binding term sheet. Joint Decl. ¶53. On October 22, 2024, the Court ordered the Parties to file for preliminary approval by November 22, 2024. *See* ECF No. 116.

Thereafter, Plaintiffs' Counsel and Lytx's Counsel continued arm's length negotiations to finalize the Settlement Agreement and plan of Notice. Based upon the discovery conducted in these Actions, as well as Plaintiffs' Counsel's independent investigation of the relevant facts and applicable law, they believe that the Settlement is fair, reasonable, adequate, and in the best interest of the Settlement Class. Joint Decl. ¶58. The Parties worked together to finalize and memorialize a comprehensive set of settlement documents, which are embodied in the Settlement Agreement and the exhibits attached thereto that are being contemporaneously submitted herewith.

## III.    THE SETTLEMENT TERMS

### A.    The Settlement Class

The Settlement Class is defined as "All individuals who, while present in the State of Illinois, operated a vehicle equipped with a DriveCam, and for whom MV+AI was used to predict distracted driving behaviors, between October 12, 2016 and the earlier of Preliminary Approval or January 1, 2025." See Agmt. ¶1.44.

### B.    Monetary Settlement Payment

The Settlement requires Lytx to pay an all-cash non-reversionary sum of $4,250,000 (the "Settlement Fund") for the benefit of the Settlement Class Members. *See* Agmt. ¶1.47. Unless they submit a valid and timely request for exclusion, each Settlement Class Member that submits an Approved Claim will be entitled to a cash payment in an amount reflecting the *pro rata* portion of the Net Settlement Fund, 50% of which will be reserved for Illinois residents and 50% for non-Illinois residents, less any Court-approved attorneys' fees and costs, service awards, and costs of settlement administration upon timely submission of an Approved Claim. *See id.* ¶¶3.1-2.

### C.    The Class Notice Plan

The Settlement provides a comprehensive Notice Plan to the Settlement Class, through the Parties' chosen Settlement Administrator, EisnerAmper. First, EisnerAmper will obtain the list of Settlement Class Members after Lytx reaches out to its customers to obtain identifying and contact information for Settlement Class Members. *See id.* ¶¶7.1-2. Lytx, in turn, will provide this information to EisnerAmper. *See id.* Lytx will also provide EisnerAmper with statistical information regarding its efforts to obtain Settlement Class Information such that it can opine on the efficacy of the overall notice program. *See id.* ¶7.4.

EisnerAmper will directly notify, via email and first-class mail, all Settlement Class Members of the Settlement for whom it can identify contact information. *See id.* ¶7.3. Additionally, EisnerAmper will issue publication notice targeted to the class population—commercial vehicle drivers—including through social media, online advertising targeted at such drivers, and print media. *See id.* ¶7.3.3.

The Class Notice includes, but is not limited to, the following information: (1) a plain and concise description of the nature of the Actions and the proposed Settlement, (2) the right of Settlement Class Members to request exclusion from the Settlement Class or to object to the

Settlement, (3) specifics on the date, time and place of the final approval hearing, and (4) information regarding Class Counsel's fee application and the Class Representatives' service awards. *See id*. ¶7.3.1 & Exs. B-D (mail, e-mail, and long-form notice).

### D.    Settlement Administration

EisnerAmper shall receive, review, and approve or reject Claim Forms to determine whether they are eligible for a Settlement Payment. *See id*. ¶¶8.4-5. It will distribute the Settlement Fund to both Illinois and non-Illinois residents on a *pro rata* basis depending on their state of residence. *See id*. ¶3.2. To the extent that any checks issued to a Settlement Class Member are not cashed within one hundred fifty (150) days after the date of issuance, such uncashed check funds shall, either be transferred to a mutually agreeable *cy pres*, subject to subject to Court approval, or, if greater than $100,000, be redistributed to Settlement Class Members who cashed their initial checks. *See id*. ¶8.11.

### E.    Opportunity to Opt-Out and Object, and Appear at Hearing

Settlement Class Members will be permitted to exclude themselves from the Settlement or object to the Settlement no later than sixty (60) days following the Notice Date. *See id*. ¶¶11.32, 1.33, 9.

### F.    Scope of Release

Settlement Class Members are releasing Lytx (and related entities) from any and all claims which have been or could have been asserted against Lytx by any member of the Settlement Class arising out of or relating to biometric data derived from the use of a DriveCam device between October 12, 2016 and the earlier of Preliminary Approval or January 1, 2025, including all claims asserted in the *Cavanaugh* and *Lewis* Actions and all claims arising under the Biometric Information Privacy Act, as set forth in the Settlement Agreement. *See id*. ¶¶1.37, 12. The release does not pertain to nor have any effect or impact on Plaintiff Timmons', Plaintiff Cavanaugh's,

and Settlement Class members' claims against GMT in the *Cavanaugh* Action, which remain ongoing. *See id.* ¶1.38.

### G.    Attorneys' Fees, Litigation Costs, and a Service Award

Class Counsel will seek an award of attorneys' fees in an amount not to exceed one-third (1/3) of the Settlement Fund, or $1,416,666.67, and reimbursement of reasonable costs and expenses incurred in relation to the investigation and litigation of the *Lewis* and *Cavanaugh* Actions not to exceed $125,000.00. *See id.* ¶4.1. Class Counsel will also seek Service Awards for each Class Representative, in an amount not to exceed $10,000 for each Class Representative, in recognition of their efforts in this litigation. *See id.* ¶4.2. Such amounts shall be paid exclusively from, and not in addition to, the Settlement Fund. *See id.* ¶4.1.1.

Negotiations on these terms were only commenced after the Parties reached agreement on all other material terms in the Agreement. *See id.* ¶4.1.2. Lytx retains the right to challenge any fees, costs, or service award request, should it wish to do so, and any un-awarded attorneys' fees, costs, or service awards will be paid directly to Settlement Class Members. *See id.* ¶4.1.

### H.    Leave to File an Amended Complaint

As part of resolving both this case and the *Cavanaugh* Action, the Parties seek to file an Amended Complaint in this Action, attached to the Settlement Agreement as Exhibit G, that adds Plaintiffs Cavanaugh and Timmons to this Action, updates the class definition, and removes claims against Defendant Maverick that are now resolved. Thereafter, the Parties will voluntarily dismiss without prejudice Mr. Cavanaugh and Mr. Timmons's claims against Lytx only in the *Cavanaugh* Action.

## IV.    LEGAL STANDARD

"The Seventh Circuit has recognized the 'overriding public interest in favor of settlements' in the class action context[.]" *Roberts v. Graphic Packaging Int'l, LLC*, No. 3:21-cv-00750-DWD,

2024 WL 3373780, at *3 (S.D. Ill. July 11, 2024) (quoting *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 312-13 (7th Cir. 1980)).

Pursuant to Rule 23(e), a class action settlement must be approved by a presiding court before it can become effective. Court approval proceeds in two stages: (1) preliminary approval of the proposed settlement and direction of notice to the class; and (2) a final approval hearing, at which the Court considers arguments concerning the fairness, adequacy, and reasonableness of the proposed settlement. *See Bradford Hammacher Grp., Inc., Emp. Stock Ownership Plan v. Reliance Tr. Co.*, No. 1:16-cv-04773, 2020 WL 13645290, at *1 (N.D. Ill. Mar. 12, 2020).

At the outset, the Court determines whether the proposed settlement is "within the range of possible approval with regard to the criteria set forth in Rule 23(e)(2)," but does not "conduct a full-fledged inquiry into whether the settlement meets Rule 23(e)'s standards[.]" *In re TikTok, Inc., Consumer Priv. Litig.*, 565 F. Supp. 3d 1076, 1083 (N.D. Ill. 2021) (citations omitted). Unless the Court's initial examination reveals "obvious deficiencies," the Court should preliminarily approve the settlement and order notice to class members. *See* 4 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 13:13 (6th ed. 2024).

Rule 23(e) provides that a court may approve a settlement upon finding "it is fair, reasonable, and adequate," after consideration of the following:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:
(i) the costs, risks, and delay of trial and appeal;
(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
(iii) the terms of any proposed award of attorney's fees, including timing of payment; and
(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

FED. R. CIV. P. 23(e)(2).

After the Court makes a preliminary fairness determination under 23(e), it must then conditionally certify a class for purposes of the Settlement under Rule 23(a) and "at least one of the subsections of 23(b)." *Hollins v. Church Church Hittle + Antrim*, No. 2:20-cv-305-JD, 2023 WL 4397769, at *3-6 (N.D. Ind. July 7, 2023) (granting preliminary approving and holding that "certification is likely appropriate under Fed. R. Civ. P. 23(a) and (b)(3)").

## V.    ARGUMENT

### A.    The Proposed Settlement Satisfies the Standards for Preliminary Approval

#### 1.    Plaintiffs and their Counsel zealously represented the Class.

Under the first Rule 23(e)(2) factor, courts consider whether the class representatives and class counsel will adequately represent the class. *See* FED. R. CIV. P. 23(e)(2). The court's analysis tracks adequacy requirement under Rule 23(a)(4). *See O'Connor v. Uber Techs., Inc.*, Nos. 13-cv-03826, 15-cv-00262, 2019 WL 1437101, at *6 (N.D. Cal. Mar. 29, 2019). Courts consider: (1) whether class representatives are "part of the class and possess the same interest and suffer the same injury as the class members;" (2) if class representatives "have *some* commitment to the case, so that the 'representative' in a class action is not a fictive concept;" and (3) "the competency and conflicts of class counsel." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 343-44 (N.D. Ill. 2010) (citations omitted).

All prongs have been satisfied here:

- Like the Class as a whole, each Class Representative was allegedly subject to the collection of his biometric data by Lytx's DriveCam technology while driving through Illinois. The Class Representatives share the same injury and the same interests as the rest of the Class (*i.e.*, to vindicate their rights under BIPA) making them adequate representatives. *In re Herff Jones Data Breach Litig.*, No. 1:21-cv-1329-TWP-DLP, 2022 WL 474696, at *2 (S.D. Ind. Jan. 12, 2022) (class

representatives adequate where they sought to maximize recovery from data breach impacting the entire class).

- Each Class Representative has shown commitment to this case by staying actively informed of the litigation and providing information to counsel. Joint Decl. ¶¶64-66. Plaintiffs are sufficiently aware of the importance and responsibility of their role as Class Representatives and have overseen and participated in the pre-filing investigation, discovery and settlement.

- Class Counsel litigated this case zealously and are more than adequate. The Settlement was reached after extensive investigation, three years of litigation across multiple actions, and thorough discovery of the issues in the Actions. In addition to pre-suit investigation, Class Counsel in the *Lewis* Action met and conferred with Lytx regarding the DriveCam technology, and conducted informal discovery, including an exchange of information and interviewing a Senior Manager of Applied Machine Learning from Lytx. Following the Court's denial of Lytx's Motion to Dismiss, Plaintiff Lewis and Lytx engaged in formal discovery regarding Lytx's MV+AI technology and whether it captures biometric data and identifiers, Rule 23 considerations, class size, and damages. Joint Decl. ¶¶31-34, 50. Plaintiff's Counsel's work crystallized the relevant facts in the case, enabling them to effectively value the parties' respective positions and verify the fairness, adequacy, and reasonableness of the Settlement. Likewise, Counsel in *Cavanaugh* and *Timmons* Actions performed an in-depth pre-suit investigation, informally exchanged discovery materials with Lytx's counsel and vigorously defended the litigation from Defendants' motion to dismiss. *Id.* ¶¶36, 39-41, 46.

In sum, "the class representatives and class counsel have adequately represented the class." FED. R. CIV. P. 23(e)(2).

### 2. The Settlement is the result of arm's-length negotiation by experienced counsel and is informed by targeted discovery.

The second Rule 23(e)(2) factor is whether the proposal was negotiated at arm's length. An arm's-length negotiation is a "truly adversarial bargaining process" the best evidence of which is the "presence of a neutral third-party mediator." *T.K. Through Leshore v. Bytedance Tech. Co.*, No. 19-cv-7915, 2022 WL 888943, at *11 (N.D. Ill. Mar. 25, 2022) (citation omitted). Courts also consider other "indicia of an arm's length adversarial process" including "confirmatory discovery" and a "vigorous factual and legal defense." *See In re TikTok, Inc., Consumer Priv. Litig.*, 617 F.

Supp. 3d 904, 934 (N.D. Ill. 2022) (granting settlement approval where the history of the case showed "a vigorously negotiated settlement reached in good faith").

This factor weighs in favor of approval. First, Plaintiffs have engaged in extensive, targeted discovery. This included pre-suit investigation, informal discovery in both Actions prior to the Court's ruling on the Motions to Dismiss, and formal discovery propounded once the Motion to Dismiss in the *Lewis* Action had been resolved. Joint Decl. ¶¶29-50. This discovery included a conference with a Lytx employee and the exchange of both formal and informal written discovery. *Id.* In addition, the Parties exchanged additional discovery materials in preparation for the successful joint mediation. *Id.* ¶50. The discovery in both Actions allowed Plaintiffs to understand Lytx's technology and assess the risks involved in continuing to litigation.

Second, the Settlement resulted from arm's-length negotiations between experienced counsel in both the *Lewis* and *Cavanaugh* Actions with an understanding of the strengths and weaknesses of their respective positions. The Parties held a full-day mediation with the Hon. James R. Epstein (Ret.) of JAMS. This adversarial process resulted in a mediator's proposal, which the Parties thoroughly considered and ultimately agreed to on September 20, 2024. In short, the Parties' process in reaching a Settlement has all the hallmarks of arm's-length negotiation required by Rule 23(e)(2). *See, e.g.*, *Charvat v. Valente*, No. 12-cv-05746, 2019 WL 5576932, at *5 (N.D. Ill. Oct. 28, 2019) (finding the parties engaged in an arm's length negotiation by attending "a full day of mediation that, after initially failing to result in a settlement, finally jumpstarted negotiations").

### 3.    The Settlement represents a strong result for the Class, particularly given the substantial risk and challenges the Class faces.

The third Rule 23(e)(2) factor requires a showing that the Settlement provides adequate relief, taking into account "the costs, risk, and delay of trial and appeal." *See* FED. R. CIV. P.

23(e)(2)(C). That is the case here, as the Settlement provides substantial relief comparable to other BIPA settlements. Taking into account the significant risks of continued litigation, challenges to recovery posed by recent changes in the law, and the relatively early posture of both Actions, settlement presents the best option for providing the Settlement Class with a fair recovery.

If Plaintiffs sought greater relief through further litigation, "all that is certain is that plaintiffs would have spent a large amount of time, money and effort." *Seiden v. Nicholson*, 72 F.R.D. 201, 208 (N.D. Ill. 1976). The significant and immediate benefits achieved by the Settlement avoids the risks, uncertainties, and delays of continued litigation.

In contrast, if the Actions were to continue, Plaintiffs and the Settlement Class would face a number of difficult challenges. Most immediately, there is a risk of an unfavorable opinion on the pending motion to dismiss in the *Cavanaugh* Action. Moreover, Plaintiffs believe settlement is appropriate, because, in part, Lytx has produced evidence to persuade Plaintiffs that its technology provides Lytx with a strong defense that Lytx's technology does not collect, capture, possess, obtain, store, use, disseminate, disclose, or profit from biometric identifiers or information, and that proving Lytx technology does otherwise would present a significant challenge and a substantial burden upon Plaintiffs should this matter proceed to summary judgment or trial.

Changes in the law could also limit Plaintiffs' recovery in a way that was not foreseeable when the Actions were filed: for example, Illinois just signed a bill into law that limits future recovery under each prong of BIPA to one violation per individual. *See* SB2979, 103rd Gen. Assemb. (Ill. 2024). Plaintiffs may no longer be able to argue that violations accrue each time Lytx collects or disseminates a Class Member's biometrics.

In short, given the risks of continued litigation and the new limits imposed by the Illinois legislature on recovery under BIPA, settlement is by far the preferable option at this juncture.

### 4. The effectiveness of any proposed method of distributing relief to the Settlement Class, including the method of processing claims.

Rule 23(e)(2)(C)(ii) requires the Court to consider the "effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." FED. R. CIV. P. 23(e)(2)(C)(ii). The proposed method of distributing relief is fair, reasonable, and straightforward. Settlement payments from the non-reversionary $4,250,000 Settlement Fund will be split, with 50% solely going to drivers who reside in Illinois and the other 50% solely going to non-Illinois residents. *See* Agmt. ¶¶1.47, 3.1-2. Based upon the estimated number of Settlement Class Members and prior to deducting fees, expenses, administration costs, and service awards, this recovery equates to an allocation of approximately $85 each for Illinois residents and $35 each for non-Illinois residents based on an estimated class size of 25,000 Illinois residents and 60,000 non-Illinois residents. A claims rate of 10% will result in much higher figures, with Illinois residents receiving $511.16 and non-Illinois residents receiving $213.19.[2]

Either figure is in line with other BIPA settlements:

- *In re Cap. One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 790 (N.D. Ill. 2015) (finding that payment of "$34.60 per claimant is not insignificant" in light of risks of continued litigation).

- *Rosenbach v. Six Flags Entm't Corp.*, No. 16-CH-13 (Ill. Cir. Ct.) (allowing for either $60 or $200 monetary relief per class member, depending on time of scan).

---

[2] These estimated figures are calculated as follows: Settlement Fund ($4,250,000) – Requested Attorney's Fees ($1,416,666.67) – Estimated Expenses ($125,000) – Estimated Notice Costs ($120,000) – Requested Service Awards ($30,000) = 2,558,333.33. That figure is then split in two for Illinois and non-Illinois residents, providing for $1,279,166.66 for each group. If 10% of Illinois residents (2,500) submit valid claims they will be entitled to $511.66 ($1,279,166.66/2,500). If 10% of non-Illinois residents (6,000 submit valid claims they will be entitled to $213.19 ($1,279,166.66/6,000).

- *In re TikTok*, 617 F. Supp. 3d at 934-37 (noting that payments of $27.19 and $163.13 to non-Illinois and Illinois class members, respectively, provided "substantial" relief to the class as compared to other data privacy class settlements).

- *Parris v. Meta Platforms, Inc.*, No. 2023LA000672 (Ill. Cir. Ct.) (class members report receiving settlement checks of approximately $32 each in settlement of claims against social media company for BIPA violations).[3]

The Settlement differentiates between Illinois and non-Illinois residents because, given the extraterritoriality defense raised by Lytx, there is a greater risk associated with the claims of non-Illinois residents. Thus, the planned distribution is equitable. *See* FED. R. CIV. P. 23(e)(2)(D).

The Claim Form, attached to the Settlement Agreement as Exhibit E, provides clear instructions about what information is required to submit a claim for a Cash Award. Agmt. Ex. E. Class Members will also be given an opportunity to cure deficiencies in their Claim Forms. *See* Agmt. ¶8.7. The Settlement as a whole will be administered by an experienced Claims Administrator.

5. **Class Counsel's request for attorneys' fees is in line with Seventh Circuit standards.**

Rule 23(e)(2)(C)(iii) requires the Court to consider "the terms of any proposed award of attorney's fees, including timing of payment." FED. R. CIV. P. 23(e)(2)(C)(iii). Here, the Agreement provides that Class Counsel may seek attorneys' fees in an amount not to exceed one-third of the Settlement Fund, or $1,416,666.67. Agmt. ¶4.1. Class Counsel's fee request of one-third "is common throughout district courts in the Seventh Circuit." *Chambers v. Together Credit Union*, No. 19-cv-00842-SPM, 2021 WL 1948452, at *2 (S.D. Ill. May 14, 2021) (awarding class

---

[3] *Payments begin for class-action Instagram settlement in Illinois. What to know*, NBC Chicago (June 7, 2024), https://www.nbcchicago.com/news/local/payments-begin-for-class-action-instagram-settlement-in-illinois-what-to-know/3457848/.

counsel one-third of the common fund as the "normal rate of compensation" and collecting cases);
*see also Kizeart v. Peabody Gateway N. Mining, LLC*, No. 3:23-cv-00515-NJR, 2024 WL
3595460, at *2 (S.D. Ill. July 30, 2024) (Rosenstengel, C.J.) (awarding fees of one-third of total
class action settlement amount).

Class Counsel will file their motion for attorneys' fees and expenses in advance of the opt-
out and objection deadline, and it will be available on the Settlement Website after it is filed. Agmt.
¶7.3.5. Class Members will thus have an opportunity to comment or object under Rule 23(h).

### 6.     There are no undisclosed side agreements.

Rule 23(e)(3) requires the parties to "file a statement identifying any agreement made in
connection with the proposal." FED. R. CIV. P. 23(e)(3). Here, there are none.

### 7.     The Settlement treats Settlement Class Members equitably.

Rule 23(e)(2)(D) instructs the Court to consider whether the settlement agreement "treats
class members equitably relative to each other." FED. R. CIV. P. 23(e)(2)(D). Here, as detailed
above, the Settlement accounts for the unique affirmative defenses related to non-Illinois residents.
*See supra* Section V.A.4.

Under this Rule, courts also consider service awards. *See, e.g., Zhu v. Wanrong Trading
Corp.*, No. 18-cv-417, 2024 WL 4351357, at *9 (E.D.N.Y. Sept. 30, 2024) (approving service
awards of $10,000 and $20,000 under Rule 23(e)(2)(D)). Here, each Class Representative will be
entitled to seek a service award of up to $10,000, in acknowledgement of each individual's time
and effort expended on the case, as well as the inherent risks of representing a class. Service awards
of this amount are typical within the Seventh Circuit, particularly in cases arising from a class
representative's employment. *See, e.g.*, *Furman v. At Home Stores LLC*, No. 1:16-cv-08190, 2017
WL 1730995, at *2 (N.D. Ill. May 1, 2017) (approving service award of $10,000 to named plaintiff
and stating service awards are appropriate in litigation where "plaintiffs assume the risk that future

employers may look unfavorably upon them if they file suit against former employers"); *see also Young v. Rolling in the Dough, Inc.*, No. 1:17-cv-07825, 2020 WL 969616, at *7 (N.D. Ill. Feb. 27, 2020) (approving service award of $10,000 for named plaintiff who "at great risk to herself" represented "995 minimum wage pizza delivery drivers"); *Briggs v. PNC Fin. Servs. Grp., Inc.*, No. 1:15-cv-10447, 2016 WL 7018566, at *2 (N.D. Ill. Nov. 29, 2016) (approving services awards of $12,500 to each named plaintiff in a FLSA settlement against their employer).

## B.    Conditional Certification of the Settlement Class Is Appropriate

Plaintiffs respectfully submit that the Court can likely certify the class for settlement purposes. *See* FED. R. CIV. P. 23(e)(1)(ii). Class certification is governed by Rule 23(a) and Rule 23(b), at least one subsection of which must be satisfied. The general standards for class certification for purposes of litigation apply to class certification for settlement, except that the court need not consider potential trial management problems. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Plaintiffs satisfy Rule 23(a)'s four requirements.

### 1.    Plaintiffs satisfy the four Federal Rule of Civil Procedure 23(a) prongs.

#### a.    Numerosity (FED. R. CIV. P. 23(a)(1))

The first of Rule 23(a)'s prerequisites is that any proposed "class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). "While there is no magic number that applies to every case, a forty-member class is often regarded as sufficient to meet the numerosity requirement." *Orr v. Shicker*, 953 F.3d 490, 498 (7th Cir. 2020) (citation omitted). Here, Lytx estimates that there are roughly 85,000 individuals, 25,000 of whom are Illinois residents, in the Settlement Class. Accordingly, the Settlement Class is sufficiently numerous to satisfy Rule 23(a)(1).

**b.    Commonality (FED. R. CIV. P. 23(a)(2))**

Rule 23(a)(2) requires that there is at least one question "of law or fact common to the class," such that the answer to that question is "apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345, 350 (2011). Plaintiffs do not, however, need to show that they ultimately will prevail before a jury: "Rule 23 allows certification of classes that are fated to lose as well as classes that are sure to win." *Schleicher v. Wendt*, 618 F.3d 679, 686 (7th Cir. 2010); *see also Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013) (same). As such, "[a] common nucleus of operative fact is usually enough to satisfy" Rule 23(a)(2). *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992).

In this case, Plaintiffs' and each Settlement Class Member's claims are based upon the common application of one Illinois statute, BIPA. Moreover, questions of law or fact common to the Settlement Class include, among others, whether: (1) Defendant captured, collected, or otherwise obtained Plaintiffs' and Settlement Class members' biometrics; (2) Defendant properly informed Plaintiffs and the Settlement Class that they captured, collected, used, and stored their biometrics; (3) Defendants obtained a written release to capture, collect, use, and store Plaintiffs' and Settlement Class members' biometrics; (4) Defendants sell, lease, trade, or profit from Plaintiffs' and Class members' biometrics; (5) Defendants disclose, redisclose, or otherwise disseminate Plaintiffs' and Settlement Class members' biometrics absent consent; and (6) Defendant's violations of BIPA were committed intentionally, recklessly, or negligently. Accordingly, common questions of law and fact exist in this Action.

**c.    Typicality (FED. R. CIV. P. 23(a)(3))**

The third requirement for class certification is that "the claims . . . of the representative parties [be] typical of the claims . . . of the class."  FED. R. CIV. P. 23(a)(3). "[T]he typicality requirement primarily directs the district court to focus on whether the named representatives'

claims have the same essential characteristics as the claims of the class at large." *Retired Chi. Police Ass'n v. City of Chicago*, 7 F.3d 584, 596-97 (7th Cir. 1993). Typicality is satisfied if the class representatives' claims "arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members and [their] claims are based on the same legal theory." *Kramer v. Am. Bank & Tr. Co.*, No. 11-cv-8758, 2017 WL 1196965, at *6 (N.D. Ill. Mar. 31, 2017) (citation omitted). Typicality "should be determined with reference to the company's actions, not with respect to particularized defenses it might have against certain class members." *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996).

Here, Plaintiffs have claims not only similar, but virtually identical, to members of the Settlement Class. Plaintiffs and Settlement Class members were all subject to the same Lytx DriveCam technology, which Plaintiffs alleged captured and retained their biometrics. Plaintiffs also allege that Lytx did not obtain consent from Plaintiffs or any Settlement Class member pursuant to 15(b). Moreover, Plaintiffs' claims are typical of the Settlement Class Members because they are based on the same legal theories and share a common injury due to Defendant's alleged violations of the BIPA. As such, Rule 23(a)(3) is satisfied.

### d.    Adequacy of Representation (FED. R. CIV. P. 23(a)(4))

Class representatives must "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). Here, Plaintiffs have no antagonistic interests in relation to other Settlement Class Members since each had their biometric information and identifiers allegedly captured without consent by Lytx. Thus, Plaintiffs are sufficiently interested in the outcome of this case to ensure their vigorous advocacy. Plaintiffs are not subject to unique defenses and they and their counsel have and continue to vigorously prosecute this case on behalf of the Settlement Class. Plaintiffs' interests align with those of the other Settlement Class Members.

In addition, Carney, Bates and Pulliam, PLLC, Lieff Cabraser Heimann & Bernstein, LLP, Nick Larry Law LLC, Werman Salas P.C., Workplace Law Partners, P.C., and Milberg Coleman Bryson Phillips Grossman, PLLC are active practitioners with substantial experience litigating actions under BIPA and complex class actions nationwide. *See* Joint Decl. Exs. A-E (firm resumes). Thus, Plaintiffs and their counsel fairly and adequately represent the Settlement Class.

## 2.     The requirements of Rule 23(b)(3) are satisfied.

Certification is appropriate under Rule 23(b) when common questions of law or fact predominate over any individual questions and a class action is superior to other available means of adjudication. *See* FED. R. CIV. P. 23(b)(3); *Amchem*, 521 U.S. at 594. These requirements are satisfied in this case.

### a.     Common questions of law or fact predominate.

In analyzing predominance, the Supreme Court has defined this inquiry as establishing "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. This is satisfied when "common questions represent a significant aspect of a case and . . . can be resolved for all members of a class in a single adjudication." *Messner v. Northshore Univ. HealthSys*., 669 F.3d 802, 815 (7th Cir. 2012) (citation omitted). Class certification may be "proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016).

Common questions represent a significant aspect of this case. Several case-dispositive questions could be resolved identically for all members of the Settlement Class, such as whether the DriveCam technology used drivers' biometrics and whether Lytx informed Plaintiffs and Settlement Class members of such and obtained their consent. Accordingly, this prong of Rule 23(b)(3) is satisfied.

**b.**    **Class resolution is superior to alternatives.**

The superiority inquiry considers whether a class action is superior to many individual actions. FED. R. CIV. P. 23(b)(3). The second prong of Rule 23(b) is satisfied by the proposed Settlement. First, each Class member's individual damages, while significant to them, are not substantial enough to justify the costs of an entire lawsuit. *See Carnegie v. Household Int'l., Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("The *realistic* alternative to a class action is not 17 million individual suits, but zero individual suits . . . ."). This suffices to establish superiority in class actions. *See, e.g.*, *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 759 (7th Cir. 2014) (noting that class resolution is superior when "aggregating . . . relatively paltry potential recoveries").

Additionally, as explained in *Amchem,* "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Pro. 23(b)(3)(D), for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620. Thus, any manageability problems that may have existed in this case are eliminated by the proposed Settlement.

## VI.    THE PROPOSED NOTICE PLAN COMPLIES WITH RULE 23 AND DUE PROCESS

After preliminary approval, Rule 23(e) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." FED. R. CIV. P. 23(e)(1)(B). The notice should inform members of the Settlement Class of the terms of the proposed Settlement and of the opportunity to present their own views on the Settlement. *See Manual for Complex Litigation* § 21.633 (4th ed. 2024). "Additionally, Rule 23(e) mandates that notice of compromise of a class action must 'be given to all members of the class in such manner as the court directs.'" *Mangone v. First USA Bank*, 206 F.R.D. 222, 231 (S.D. Ill. 2001). But neither Rule 23 nor due

process require "actual notice to all class members," which sometimes "might be *impossible*." *Mullins v. Direct Digit., LLC*, 795 F.3d 654, 665 (7th Cir. 2015).

Here, the Class Notice meets all the requirements of Rule 23(c)(2)(B) by advising Settlement Class Members of the nature of the claims involved in the case; the essential terms of the Settlement, including the definition of the Settlement Class, the class claims and issues involved in the Actions, and the method of distribution of settlement proceeds; the rights of the Settlement Class Members to enter an appearance through an attorney if so desired; the rights of Settlement Class Members to participate in the Settlement, to request exclusion from the Settlement Class or to object to the Settlement, and specifics on the dates and how to exercise these rights; the requirements for opting out, for objecting, and for making an appearance at the Final Approval Hearing; the time and location of the Final Approval Hearing; and the binding effect of a class judgment on members. Agmt. Exs. B-D. Thus, the Class Notice provides the necessary information for Settlement Class Members to make an informed decision regarding the proposed Settlement. The Class Notice also contains information regarding the anticipated amount of Class Counsel's requests for attorneys' fees and costs, and service awards for the Class Representatives.

Moreover, the proposed Notice Plan proposes to notify Settlement Class Members of the Settlement by (i) emailing the Email Notice (Ex. B) to Settlement Class Members for whom an email address is available; or (ii) mailing a Postcard Notice (Ex. C) to those Settlement Class Members for whom an email address is unavailable; and (iii) publication notice, including through social media, online advertising targeted at commercial drivers, and print media. Agmt. ¶¶7.1-3. Thus, Settlement Class Members will be identified from Defendant's and their customers' records and receive individual notice where practicable. *Id.* ¶7.1.

Settlement Class Members will have 90 days from the Settlement Notice Date to submit a claim, (*id.* ¶1.9), and 60 days to object or opt-out of the Settlement. (*id.* ¶¶1.31-32). The Settlement Administrator will add Class Counsel's motion for attorneys' fees to the Settlement Website at least 21 days before the objection deadline. *Id.* ¶1.22.

Accordingly, the form and manner of Notice proposed here satisfies Rule 23's requirements and due process, and Plaintiffs respectfully request that the Court approve the proposed Notice Plan.

## VII.   LEAVE TO AMEND COMPLAINT SHOULD BE GRANTED

Pursuant to Federal Rule of Civil Procedure 15, Plaintiffs seek leave to file an amended complaint adding Plaintiffs Timmons and Cavanaugh to this Action. Agmt. Ex. G. A party may amend its pleading with "the court's leave" and "the court should freely give leave to amend when justice so requires." FED. R. CIV. P. 15(a)(2). The amended complaint solely seeks to add Mr. Cavanaugh and Mr. Timmons in this case, update the class definition, and remove paragraphs related to former Defendant Maverick. In light of the Settlement, which finally resolves both actions, good cause exists. *See, e.g.*, *Stewart v. Marshall Etc., Inc.*, No. 14-cv-1002-NJR-PMF, 2015 WL 5120817, at *5 (S.D. Ill. Aug. 28, 2015) (Rosenstengel, C.J.) (granting preliminary approval and leave to file an amended complaint adding additional claims).

## VIII.   SCHEDULING AND FINAL APPROVAL HEARING

The next steps in the settlement approval process are to notify Settlement Class Members of the Settlement and permit them to file claims, opt-out, or object, and then hold a Final Approval Hearing. To those ends, the Parties propose the following schedule:

| Event | Date |
|---|---|
| Settlement Notice Date | 70 days after issuance of Preliminary Approval Order |
| Last day for Plaintiffs and Class Counsel to file | 39 days after Settlement Notice Date (21 days |

| motion for attorneys' fees, expenses, and service awards | before the Opt-Out/Objection Deadline) |
|---|---|
| Opt-Out Deadline/Objection Deadline | 60 days after Settlement Notice Date |
| Last day for Settlement Class Members to file Claim Forms (excluding time set forth in the Settlement to correct errors or omissions) | 90 days after Settlement Notice Date |
| Last day for Parties to file any motions for final approval, including any responses to objections | 14 days before Final Approval Hearing |
| Final Approval Hearing | No earlier than 120 days after the Settlement Notice Date, or as soon thereafter as practicable |

## IX.    **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order: (1) granting preliminary approval of the proposed Settlement; (2) holding that it will likely certify, for settlement purposes, the Settlement Class; (3) appointing Plaintiffs as Class Representatives of the Settlement Class; (4) appointing Carney, Bates and Pulliam, PLLC, Lieff Cabraser Heimann & Bernstein, LLP, Nick Larry Law LLC, Werman Salas P.C., Workplace Law Partners, P.C., and Milberg Coleman Bryson Phillips Grossman, PLLC as Class Counsel; (5) approving the Parties' proposed Notice Plan, including the proposed forms of notice, and directing that notice be disseminated pursuant to such Notice Plan and Fed. R. Civ. P. 23(c) and (e)(1); (6) appointing EisnerAmper as Settlement Administrator and directing it to carry out the duties and responsibilities of the Settlement Administrator specified in the Settlement; (7) setting deadlines for Settlement Class Members to request exclusion from the Settlement, object to the Settlement, and submit claims for payment; (8) staying all non-Settlement-related proceedings pending final approval of the Settlement; (9) permitting Plaintiffs to file the proposed Amended Complaint attached hereto as Exhibit G; and (10) scheduling a Final Approval Hearing and certain other dates in connection with the final approval of the Settlement pursuant to Fed. R. Civ. P. 23(e)(2).

Dated:  November 22, 2024                    Respectfully submitted,

/s/ Randall K. Pulliam                        /s/ Sean A. Petterson
Randall K. Pulliam                            Sean A. Petterson

Randall K. Pulliam, (admitted *pro hac vice*)  Jason L. Lichtman (admitted *pro hac vice*)
rpulliam@cbplaw.com                           jlichtman@lchb.com
Samuel R. Jackson (admitted *pro hac vice*)    Sean A. Petterson (admitted *pro hac vice*)
sjackson@cbplaw.com                           spetterson@lchb.com
CARNEY BATES AND PULLIAM, PLLC                LIEFF CABRASER
One Allied Drive, Suite 1400                   HEIMANN & BERNSTEIN LLP
Little Rock, AR 72202                          250 Hudson St., 8th Floor
Telephone: (501) 312-8500                      New York, New York 10013
Facsimile: (501) 312-8505                      (212) 355-9500

J. Dominick Larry                              Douglas M. Werman
NICK LARRY LAW LLC                            dwerman@flsalaw.com
1720 W. Division St.                           WERMAN SALAS P.C.
Chicago, IL 60622                              77 W. Washington Street, Suite 1402
Telephone: 773.694.4669                        Chicago, Illinois 60602
Facsimile: 773.694.4691                        (312) 419-1008
nick@nicklarry.law
                                               David Fish
*Attorneys for Plaintiffs and the Class*        dfish@fishlawfirm.com
                                               WORKPLACE LAW PARTNERS, P.C.
                                               111 E. Wacker Dr., Suite 2300
                                               Chicago, IL 60601
                                               (312) 861-1800

                                               Gary M. Klinger
                                               gklinger@milberg.com
                                               MILBERG COLEMAN BRYSON
                                               PHILLIPS GROSSMAN, PLLC
                                               227 W. Monroe Street,
                                               Suite 2100
                                               Chicago, IL 60606
                                               (866) 252-0878

                                               *Attorneys for Plaintiffs and the Class*